IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Case No.　　5:19-CR-301 (DNH) |
| | ) | |
| | ) | **Plea Agreement under Rule 11(c)(1)(C) of** |
| **v.** | ) | **the Federal Rules of Criminal Procedure** |
| | ) | |
| | ) | |
| **Kyle M. Leeper,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, and defendant Kyle M. Leeper (hereinafter "the defendant"), by and through the defendant's counsel of record, hereby enter into the following plea agreement pursuant to Rule 11(a)(2) and (c)(1)(C) of the Federal Rules of Criminal Procedure:

1) **The Defendant's Obligations:**

a) **Guilty Plea:** The defendant will change the defendant's previously entered plea of "not guilty" and plead guilty to Counts One, Two, and Five of the third superseding indictment in Case No. 5:19-CR-301 (DNH) charging as follows:

　　i.　**In Count One**, that the defendant, while engaging in an offense punishable under Section 841(b)(1)(A) of Title 21 of the United States Code, specifically a conspiracy to knowingly and intentionally distribute and possess with intent to distribute one or more controlled substances, which violation involved 50 grams or more of methamphetamine, intentionally killed another person, all in violation of Title 21, United States Code, Section 848(e)(1)(A);

　　ii.　**In Count Two**, that the defendant conspired with others to knowingly and intentionally distribute and possess with intent to distribute one or more

controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, with that violation involving 50 grams or more of methamphetamine, in violation of Title 21, United States Code, Section 841(b)(1)(A)(viii); and

iii. **In Count Five**, that the defendant knowingly possessing in and affecting commerce a firearm and ammunition, all of which had been shipped and transported in interstate commerce, well knowing that he previously had been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

b) **Special Assessment:**   The defendant will pay an assessment of $100 per count of conviction pursuant to 18 U.S.C. § 3013.  The defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $300, payable to the United States District Court, at the time of sentencing.

c) **Compliance with Other Terms of Agreement:** The defendant will comply in a timely manner with all the terms of this plea agreement.

d) **Forfeiture:** The defendant will consent to entry of an order directing forfeiture to the United States of the property described in the Forfeiture Allegation in the third superseding indictment, specifically:

i. Pursuant to 21 U.S.C. § 853(a): $429.00 in United States currency, as property constituting, and derived from, any proceeds obtained, directly or indirectly, as the result of the offense charged in Count Two of the third superseding indictment; and

any property used, and intended to be used, in any manner or part, to commit, and to facilitate the commission of such offense; and

ii. Pursuant to Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c): (i) a COBRA Enterprises, Inc. Model FS380, .380 caliber pistol, serial number FS115720; and (ii) 149 rounds of Remington UMC Brand .380 caliber ammunition; one (1) round of Remington 9mm Luger ammunition; one (1) round of Winchester 9mm Luger (silver) ammunition; two (2) rounds of Winchester 9mm Luger (gold) ammunition; one (1) round of Winchester 9mm Luger (WCC) ammunition; one (1) round of Speer 9mm Luger ammunition; and one (1) round of Speer 9mm Luger ammunition, as a firearm and ammunition involved in the commission of the offense described in Count Five of the third superseding indictment.

2) **The Government's Obligations:**

a) **Dismissal of remaining charges:** Upon imposition of a sentence consistent with the terms of this agreement, the government will move to dismiss all charges against the defendant in Case No. 5:19-CR-301 (DNH) other than those to which the defendant pled guilty pursuant to this agreement and on which the Court imposed sentence.  Such dismissal will be without prejudice, permitting the government to seek reinstatement of all those charges if the guilty plea and sentence do not remain in effect.  Further, the defendant agrees that the statute of limitations, which may limit the time within with the government may seek charges, will be tolled from the date of dismissal of any charges under this agreement and the reinstatement of such charges if the guilty plea and sentence do not remain in effect.

b) **Non-prosecution for other offenses:** For so long as the defendant's guilty plea and the sentence remain in effect, the government will not seek other federal criminal charges

against the defendant based on conduct described in the third superseding indictment in Case No 5:19-CR-301 (DNH) and/or in the paragraph of this agreement entitled "Factual Basis for Guilty Plea," occurring before the date on which the defendant signs this agreement.  This agreement does not prevent the government from seeking charges based on other conduct.

c) **Compliance with Other Terms of Agreement:** The government will comply in a timely manner with all the terms of this plea agreement.

3) <u>**Agreed-Upon Imprisonment Range:**</u> Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the government and the defendant agree that the following statutory range of imprisonment is appropriate: a combined term of imprisonment on all counts of conviction not less than 25 years and not more than 40 years.  The government and the defendant agree that, to the extent the agreed-upon range departs from the applicable sentencing guidelines range, that departure would be made for justifiable reasons under U.S.S.G. § 6B1.2(c)(2).  A term of imprisonment within the agreed-upon range would be reasonable and appropriate under the unique combination of facts and circumstances relating to the defendant, the offenses of conviction, and the defendant's offense conduct and related relevant conduct.

4) <u>**Potential Maximum Penalties:**</u> The defendant understands that the Court can impose the following maximum penalties for the offenses to which the defendant agrees to plead guilty and may be required to impose mandatory minimum terms of imprisonment, all as set out below:

a) **Minimum and maximum terms of imprisonment:**

    i.  **Count One:**

        (a) Minimum term of imprisonment: 20 years pursuant to 21 U.S.C. § 848(e)(1)(A);

        (b) Maximum term of imprisonment: Life (or death[1]) pursuant to 21 U.S.C. § 848(e)(1)(A);

    ii.  **Count Two:**

        (a) Minimum term of imprisonment: 10 years pursuant to 21 U.S.C. § 841(b)(1)(A);

        (b) Maximum term of imprisonment: Life pursuant to 21 U.S.C. § 841(b)(1)(A);

    iii.  **Count Five:**

        (a) Maximum term of imprisonment: 10 years pursuant to 18 U.S.C. § 924(a)(2).

b) **Maximum fine:**

    i.  **Count One:** $250,000 pursuant to 18 U.S.C. § 3571(b)(3);

    ii.  **Count Two:** $10,000,000 pursuant to 21 U.S.C. § 841(b)(1)(A);

    iii.  **Count Five:** $250,000 pursuant to 18 U.S.C. § 3571(b)(3).

c) **Supervised release term:** In addition to imposing any other penalty, the sentencing court must require the defendant to serve a term of supervised release between five (5) years and life, to begin after imprisonment. *See* 21 U.S.C. § 841(b)(1)(A). A violation of the conditions of supervised release during that time may result in the defendant being sentenced to an additional term of imprisonment up to five (5) years.

d) **Other adverse consequences:** Other adverse consequences may result from the defendant's guilty plea as further described in paragraph F below.

---

[1] The Department of Justice has chosen not to seek the death penalty against the defendant in this case.

5)    **Elements of Offenses:** The defendant understands that the following are the elements of the offenses to which the defendant agrees to plead guilty.   The defendant admits that the defendant's conduct satisfies each and every one of these elements.

a)  **Count One**:

    i.    First, that the defendant was engaged in or working in furtherance of a conspiracy to distribute one or more controlled substances, which conspiracy involved 50 grams or more of methamphetamine and thus was punishable under 21 U.S.C. § 841(b)(1)(A);

    ii.    Second, that the defendant intentionally killed another person; and

    iii.    Third, that such killing occurred because of and as part of the defendant's engaging in or working in furtherance of the conspiracy to distribute one or more controlled substances.

b)  **Count Two:**

    i.    First, that the conspiratorial agreement described in Count Two of the third superseding indictment—to knowingly and intentionally distribute and possess with intent to distribute a controlled substance, with that violation involving 50 grams or more of methamphetamine—existed between two or more people;

    ii.    Second, that the defendant willfully joined that conspiracy, either at its inception or during the conspiracy; and

    iii.    Third, that the defendant is criminally responsible for 50 grams or more of methamphetamine because of his membership in the conspiracy by virtue of his direct involvement with that quantity of methamphetamine in furtherance of the conspiracy and/or the reasonably foreseeable involvement by co-conspirators with that quantity of methamphetamine in furtherance of the conspiracy.

c) **Count Five:**

    i.    First, that the defendant previously was convicted in any court of a crime punishable by imprisonment for a term exceeding one year, as charged, and that the defendant knew this;

    ii.    Second, that the defendant knowingly possessed the firearm and/or ammunition, as charged in the third superseding indictment; and

    iii.    Third, that the possession charged was in or affecting interstate commerce.

6)     **<u>Factual Basis for Guilty Plea:</u>** The defendant admits the following facts, that those facts demonstrate the defendant's guilt for the offenses to which the defendant is pleading guilty, and that there are no facts establishing a viable defense to those offenses:

a)    In the fall of 2018, Crystal Stephens, in series of telephone calls from the Montgomery County (Indiana) jail, provided the defendant with a telephone number for John Rice and encouraged the defendant to contact Rice, including for the purpose of receiving from Rice crystal methamphetamine for distribution.

b)    In the fall and winter of 2018, the defendant contacted John Rice and arranged to travel from the Cortland area in the Northern District of New York to Crawfordsville, Indiana to meet Rice. On or about December 26 and 27, 2018, the defendant drove his pickup truck to the Crawfordsville, Indiana area and, among other things, obtained approximately four ounces of crystal methamphetamine from John Rice with the understanding that the defendant would distribute the methamphetamine and pay Rice $3,000 for the drugs.

c)    After distributing methamphetamine in the Cortland, NY area, the defendant again drove to Indiana in his pickup truck and, among other things, paid John Rice $3,000 and obtained from Rice an additional four ounces of crystal methamphetamine with the agreement that

he again would repay Rice $3,000 after selling the methamphetamine.  John Rice also provided the defendant with a COBRA Enterprises, Inc. Model FS380, .380 caliber pistol, serial number FS115720 [hereinafter "Cobra pistol"].

d) The defendant left Indiana on or about January 3, 2019, returned to the Cortland, NY area, and distributed methamphetamine he had obtained from John Rice in Indiana.  As the defendant later learned, law enforcement officials executed a search warrant at John Rice's residence in Crawfordsville, Indiana on January 4, 2019, and arrested him.  Thereafter, the defendant avoided contact with John Rice, both in person and by telephone.

e) In January 2019, the defendant arranged to travel to Southern California to purchase crystal methamphetamine using profits from the sale of methamphetamine that John Rice had provided to the defendant.  Among other things, the defendant had an associate rent a car for him to use for the cross-country trip and asked Ramon Nieves Cotto to accompany him.

f) On or about January 13, 2019, Crystal Stephens, in a telephone call from the Montgomery County jail, provided the defendant with telephone numbers of possible methamphetamine sources of supply in Southern California, including a potential source whom she identified as "Ken."

g) On or about January 16, 2019, after driving from the Cortland, NY area, the defendant and Ramon Nieves Cotto arrived in the East Los Angeles area.  On or about January 16 and 17, 2019, the defendant contacted the person whom he knew as "Ken" by telephone to arrange the purchase of three pounds of crystal methamphetamine for $5,000.

h) On the morning of January 17, 2019, Arlene Rodriguez, who was with "Ken," volunteered to obtain methamphetamine for the defendant.  She contacted Robert Chavez, who was staying in a room in a nearby motel.

8

i)   "Ken," Arlene Rodriguez, and another person who was with them travelled by car to Robert Chavez's motel room.  A short time later, the defendant arrived in the rental car.  Robert Chavez arranged for his methamphetamine source to deliver three pounds of crystal methamphetamine in exchange for the defendant's $5,000.

j)   On or about January 17, 2019, the methamphetamine source arrived in the parking lot of the motel where the defendant, Robert Chavez, Arlene Rodriguez, and "Ken" had waited for the delivery.  While the others were inside the motel room, Robert Chavez and the source exchanged the defendant's $5,000 for a backpack in the motel parking lot.  Robert Chavez then re-entered the room and gave the backpack to the defendant.

k)   The defendant discovered that the methamphetamine source had delivered substantially less methamphetamine than the agreed-upon three pounds.  By then, the methamphetamine source had departed with the defendant's $5,000.   The defendant took the methamphetamine that had been delivered and, using the Cobra pistol, abducted Arlene Rodriguez and "Ken" at gunpoint.  He directed Arlene Rodriguez to drive the rental car to a nearby fast-food restaurant where Ramon Nieves Cotto got into the rental car.  The defendant then directed Arlene Rodriguez to drive back to the area near the motel, which she did.  She parked the car in the parking lot of liquor store diagonally across an intersection from the motel entrance.

l)   The defendant then used threats of violence made over the telephone to persuade Robert Chavez to come out of the motel room, walk to where the rental car was parked, and get into the hatchback area of the car.   For the remainder of the daylight hours on January 17, 2019, Robert Chavez, Arlene Rodriguez, and "Ken" attempted to obtain either methamphetamine or money to compensate the defendant for the shortfall of the

9

methamphetamine delivered to the motel.  At one point, the defendant and Ramon Nieves Cotto released "Ken" by permitting him to get out of the rental car.  Later, Arlene Rodriguez arranged for the defendant to obtain a few ounces of methamphetamine from Edgar Arredondo.

m) After nightfall on January 17, 2019, the defendant directed Arlene Rodriguez to drive the rental car—still containing Robert Chavez and Ramon Nieves Cotto, as well as Rodriguez and the defendant—west and then north on Interstate I-15, leaving the Los Angeles Basin. The defendant had Arlene Rodriguez stop at a Walmart store, where the defendant told Ramon Nieves Cotto to purchase zip ties.  Ramon Nieves Cotto did so, and the defendant later used the zip ties to bind Robert Chavez's hands behind his back and his feet.

n) On the night of January 17, 2019, the defendant directed Arlene Rodriguez to drive to a deserted area near Barstow, California; turn off on to a dirt road; extinguish the headlights of the rental car; and then park the car.  The defendant removed Robert Chavez from the rental car.  While Ramon Nieves Cotto and Arlene Rodriguez remained inside the car, the defendant walked Chavez a short distance away and shot him from behind eight times with the Cobra pistol, killing Chavez.  The defendant then returned to the car, leaving Chavez's body in the deserted area.

o) The defendant, Ramon Nieves Cotto, and Arlene Rodriguez drove across the country back to the Cortland, NY area, arriving on or about January 21, 2019.  Within a week or so, Arlene Rodriguez's relationship with the defendant changed.  She began sharing a bedroom with him and accompanying him as he made deliveries of the methamphetamine he had acquired in the Los Angeles area on January 17, 2019, and as he collected payment for methamphetamine he previously had distributed to others.

10

p) Beginning on or around January 24, 2019, Arlene Rodriguez, in response to urging from the defendant, contacted Edgar Arredondo to arrange a multi-pound methamphetamine purchase in the Los Angeles area.

q) The defendant again had an associate rent a car for the defendant to use. On or about February 5, 2019, the defendant, Ramon Nieves Cotto, and Arlene Rodriguez left the Cortland area bound for Los Angeles, California. They arrived on or about February 7, 2019. They met with Edgar Arredondo and another male in a garage in East Los Angeles. The defendant purchased from Arredondo and the other male between six and eight pounds of crystal methamphetamine for approximately $1,500 per pound. The other male also provided the defendant with a handgun. The parties discussed the possible shipment of blue opioid pills from California to the Cortland, NY area.

r) The defendant, Ramon Nieves Cotto, and Arlene Rodriguez eventually returned together to the Cortland, NY area on or about February 13, 2019, where the defendant, assisted by Rodriguez, packaged the methamphetamine for sale in small quantities and sold methamphetamine to local buyers.

s) On or about February 19, 2019, the defendant and Arlene Rodriguez were stopped by members of the Cortland County Sheriff's Office in the Cortland, NY area while in the defendant's pickup truck. The defendant was driving. In the pickup truck, police found the Cobra pistol, which was loaded, approximately four pounds of high purity crystal methamphetamine, and the following ammunition: 149 rounds of Remington UMC Brand .380 caliber ammunition; one (1) round of Remington 9mm Luger ammunition; one (1) round of Winchester 9mm Luger (silver) ammunition; two (2) rounds of Winchester 9mm Luger (gold) ammunition; one (1) round of Winchester 9mm Luger (WCC) ammunition;

one (1) round of Speer 9mm Luger ammunition; and one (1) round of Speer 9mm Luger ammunition.  The firearm and ammunition all were manufactured outside the state of New York.

t)   As of February 19, 2019, the defendant had been convicted in a court of a crime punishable by imprisonment for a term exceeding one year and knew this fact.

7)   **Sentencing Stipulations:** The government will recommend a 2-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. §3E1.1(a) if, (i) through the time of sentencing, the government is convinced that the defendant has demonstrated "acceptance of  responsibility" for the offenses to which the defendant is pleading guilty and all relevant conduct, as defined in U.S.S.G. § 1B1.3; and (ii) the government does not determine that the defendant, after signing this agreement, committed any other federal, state, or local crimes, or engaged in conduct that constitutes "obstruction of justice," as defined in U.S.S.G. §3C1.1.

8)   **Waiver of Rights to Appeal and Collateral Attack:** The defendant waives (gives up) any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. §§ 2241 and 2255, to appeal and/or to collaterally attack the following (except that the defendant does not waive the right to raise a claim based on alleged ineffective assistance of counsel):

a)   The convictions resulting from the defendant's guilty plea;

b)   Any claim that the statutes to which the defendant is pleading guilty are unconstitutional;

c)   Any claim that the admitted conduct does not fall within the scope of the statute;

d)   Any term of imprisonment within the agreed-upon range described above;

e)   Any sentence to a fine within the maximum permitted by law;

f)   Any sentence to a term of supervised release within the maximum permitted by law;

g)  Any order of forfeiture imposed by the Court that is consistent with governing law and is not contrary to the terms of this agreement.

Nothing in this appeal waiver is meant to be or should be construed as a representation of or agreement concerning the appropriate sentence in this case.

Pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure, the parties agree that with the consent of the Court, the defendant reserves the right to have an appellate court review the determination adverse to the defendant on all the issues raised in the defendant's pretrial motion filed on October 29, 2021 (Docket #151) including:  (a) whether evidence located in and seized from the pickup truck occupied by Kyle M. Leeper and Arlene N. Rodriguez on February 19, 2019, should have been suppressed under the Fourth Amendment; and (b) whether a search warrant permitting the taking of a buccal swab from Kyle M. Leeper on or about April 10, 2019, was constitutionally invalid because it was issued without a showing of probable cause and *ex parte*. If the defendant prevails on appeal he will be permitted to withdraw his guilty plea without penalty.

A. **<u>Right to Counsel:</u>** The defendant has a right to assistance of counsel in connection with settlement of this case and understands that right.   Defense counsel has advised the defendant of nature of the charges to which the defendant is agreeing to plead guilty and the range of possible sentences.

B. **<u>Waiver of Trial-Related Rights:</u>** The defendant has the following additional constitutional rights in connection with the charges in this case: (i) to be presumed innocent until proven guilty beyond a reasonable doubt; (ii) to plead not guilty; (iii) to trial by jury; (iv) to confront, cross-examine, and compel the attendance of witnesses at trial; (v) to present defense evidence; and (vi) to remain silent and be protected against compelled self-incrimination.   The defendant understands that by pleading guilty, the defendant waives (gives up) these rights.

C. **<u>Court Not Bound by Plea Agreement:</u>** This plea agreement is made pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.   The Court is neither a party to, nor bound by this Plea Agreement.   The Court may accept or reject this Plea Agreement or defer a decision until it has considered the Presentence Investigation Report prepared by the United States Probation Office.   If the Court rejects the provisions of this agreement agreeing to a specified imprisonment range, the Court will inform the parties that the court rejects the plea agreement; advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement, pursuant to Fed. R. Crim. P. 11(c)(5) & (d).

**D.  Sentencing:**

a.  **Maximum terms of imprisonment:**  The defendant understands that the Court has discretion to impose a sentence within the statutory maximum sentence(s) set out in this agreement, subject to the terms of this agreement.  If the defendant is pleading guilty to multiple charges, the Court may be required by law to have the sentences of imprisonment on the convictions resulting from those charges run consecutively to each other.  Otherwise, the Court has discretion to have sentences of imprisonment run concurrently or consecutively.  *See* 18 U.S.C. § 3584.

b.  **Mandatory minimum terms of imprisonment:**  If specified in this agreement, the conviction on one or more charges to which the defendant has agreed to plead guilty may require imposition of a mandatory minimum term of imprisonment.  In such cases, the court must impose a term of imprisonment no less than the required mandatory minimum term unless an exception to that requirement applies.  Such exception may be dependent on a motion by the government.

c.  **Section 851 Enhancements**: The defendant understands that if the government has filed an information against the defendant as provided 21 U.S.C. § 851, alleging that the defendant has one or more final convictions for a felony drug offense, and, as part of this agreement, the defendant has admitted and/or affirmed that the defendant was so convicted, then, by pleading guilty, the defendant will lose the right to attack any sentence the court imposes by challenging  any  such  prior conviction.

d.  **Sentencing guidelines:**

i.  The actual sentence to be imposed upon the defendant is within the discretion of the sentencing Court, subject to the statutory maximum and mandatory minimum penalties

15

and the terms of this agreemeent, as described above, and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder. While the Court is not bound to impose a sentence within the applicable sentencing guidelines range, it must take into account the sentencing guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).

ii. Any estimate of the defendant's offense level, criminal history category, and sentencing guidelines range provided before sentencing is preliminary and is not binding on the parties to this agreement, the Probation Office, or the Court. Until the Probation Office has fully investigated the defendant's criminal history, it is not possible to predict with certainty the defendant's criminal history category and, in some cases, the defendant's offense level.

iii. Under certain circumstances, the defendant's criminal history may affect the defendant's offense level under the federal sentencing guidelines. If the presentence investigation reveals that the defendant's criminal history may support an offense level different than an offense level stipulated in this agreement, the parties are not bound by any such stipulation as to the defendant's offense level and may advocate with respect to how the defendant's criminal history affects the offense level.

e. **Factual findings:** The defendant understands that the sentencing Court may make factual findings with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines, whether or not such factors or issues have been admitted by the defendant or stipulated by the parties. In making those findings by a preponderance of the evidence, the Court may consider any reliable evidence,

16

including hearsay.   The Defendant understands that the sentence imposed may be determined based upon such judicial fact-finding.

f. **Use of the Defendant's Statements:** The defendant understands that the sentencing court may consider any statement that the defendant has made or makes in this Plea Agreement, during the guilty plea, to the Probation Office, and at sentencing when imposing sentence. In addition the government may be able to use the defendant's statements in this agreement and at the guilty plea and at sentencing in any criminal, civil, or administrative proceeding. For example, if the defendant fails to enter a guilty plea (as required by this agreement) or the defendant's guilty plea is later withdrawn or vacated for any reason other than the Court's rejection of this Plea Agreement under Fed. R. Crim. P. 11(c)(5), or the defendant's withdrawal pursuant to Rule 11(a)(2), the government may introduce the defendant's statements into evidence in any prosecution.   If, however, the Court rejects this Plea Agreement under Fed. R. Crim. P. 11(c)(5), and the defendant withdraws the guilty plea pursuant to Fed. R. Crim. P. 11(d)(2)(A), the government will not be permitted to use any of the defendant's statements in this Plea Agreement.   To the extent that Rule 11(f) of the Federal Rules of Criminal Procedure and/or Rule 410 of the Federal Rules of Evidence are inconsistent with this paragraph, the defendant waives (gives up) any protections under those rules.

g. **Sentencing-Related Information:** The government has the right to advise the sentencing Court and the Probation Office of any information, in aggravation or mitigation of sentencing, whether or not encompassed within the count(s) to which the defendant has agreed to plead guilty, subject only to the limitation described in U.S.S.G. §1B1.8.   No stipulation in this plea agreement limits the obligations of both parties to ensure that the

sentencing Court has all information pertinent to its determination of an appropriate sentence. The parties may provide any factual information relevant to sentencing to the Probation Office and/or to the Court, without limitation, before or after the completion of the Presentence Investigation Report. The parties agree that the submission of such information shall not be deemed "advocacy" in violation of any stipulation in this plea agreement.

h. **Supervised Release Term and Conditions:** If the defendant is placed on supervised release, under some circumstances, including the defendant's violation of one or more supervised release conditions, the Court may extend the term of supervised release, and may modify, reduce, or enlarge the conditions of such release.

E. <u>**Government's Obligations Contingent on Imposition of Agreed-Upon Sentence:**</u> If the Court imposes a sentence below the low end of the agreed-upon range, the government has no obligation to dismiss existing charges or refrain from seeking additional charges. The defendant waives (gives up) any defense or objection to the commencement of any prosecution for new charges that is not time-barred by the applicable statute of limitations as of the date on which the defendant signed this plea agreement, notwithstanding the expiration of the statute of limitations between the signing of the agreement and the commencement of any such prosecution.

F. <u>**Other Adverse Consequences:**</u> The following are some examples of the adverse consequences of pleading guilty other than the sentence imposed by the Court, along with any judicial order of forfeiture and/or restitution:

a. Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

b.  If the defendant is not a United States citizen, such conviction may result in deportation or removal from the United States, may bar readmission to the United States if the defendant leaves the country, and may result in a denial of a pending or future application for citizenship.  If the defendant is a naturalized United States citizen, such conviction may result in denaturalization, followed by deportation or removal from the United States. Under federal law, removal or deportation may be an almost certain consequence of a conviction for a broad range of federal offenses, including, but not limited to, aggravated felonies, as defined in 8 U.S.C. § 1101(a)(43), and crimes of moral turpitude, which includes crimes involving fraud.  Removal and other immigration consequences are the subject of a separate proceeding.  No one, including the defendant's attorney and the Court, can predict with certainty the effect of the conviction resulting from this agreement on the defendant's immigration status.  The defendant understands this uncertainty and nonetheless wishes to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is the defendant's automatic removal from the United States.

A felony conviction may adversely affect the defendant's ability to hold certain professional licenses and may impair the defendant's ability to do business with federal, state, and local governments or to receive benefits from such governments.

There may be other adverse consequences as well, some of them unforeseeable.  It may be difficult or impossible to predict all of the adverse consequences of the defendant's guilty plea.  The defendant agrees that any resulting adverse consequences, whether or not foreseen or foreseeable, will not provide a basis for withdrawing from the guilty plea described in this agreement or otherwise challenging the resulting conviction and sentence.

G. **Restitution:** Independent of any agreement to pay restitution, and whether there is any such agreement, the sentencing Court may be required to order that the defendant pay restitution to any victim of the offense(s) of conviction under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A.  In addition, the sentencing Court may have the authority to order that the defendant pay restitution to any victim of the offense(s) of conviction pursuant to 18 U.S.C. §§ 3663 & 3664.  In any case involving a conviction for a sexual exploitation offense in chapter 110 of title 18 of the United States Code, the Court must order restitution for the full amount of the victim's losses as determined by the court.  The victim's losses include, but are not limited to medical services related to physical, psychiatric, or psychological care; physical or occupational therapy or rehabilitation; necessary transportation, temporary housing, and child care expenses; lost income; attorney's fees and other costs; and any other losses suffered by the victim as a proximate result of the offense.  The restitution payment will be in addition to any other civil or criminal penalty authorized by law.

H. **Forfeiture:** If the defendant has agreed to forfeiture of assets, the defendant agrees to the following terms and conditions:

    a.   The defendant hereby forfeits, to the United States, all right, title, and interest of any nature in any and all assets that are subject to forfeiture, including substitute assets, as set forth above, whether those assets are in the possession or control of the defendant, a nominee, or some other third party.

    b.   The defendant consents to the entry of an order of forfeiture of the assets described above.

    c.   The defendant is aware that pursuant to Rule 32.2(b)(4)(A) of the Federal Rules of Criminal Procedure, a preliminary order of forfeiture becomes final as to a given defendant at sentencing or at any time before sentencing if the defendant consents.  The defendant

consents that the preliminary order of forfeiture in this case shall become final as to the defendant before sentencing, as of the date the preliminary order of forfeiture is entered by the Court.  The defendant understands that the government, upon entry of the preliminary order of forfeiture, will address any potential third party claims pursuant to Rule 32.2(c), and seek to finalize forfeiture.

d. Forfeiture of the defendant's assets will not satisfy all, or any portion of, a fine, restitution, or other monetary penalty that the Court may impose upon the defendant in addition to forfeiture.  Satisfaction of all, or any portion of, any restitution, fine, or other penalty that the Court may impose upon the defendant in addition to forfeiture will not satisfy all, or any portion of, any forfeiture judgment ordered by the Court.

e. In the event that any successful claim is made, by any third party, to the assets described above, the defendant agrees to forfeit substitute assets equal in value to the assets transferred to any such third party.  The defendant agrees that forfeiture of substitute assets shall not be deemed an alteration of the Defendant's sentence.

f. The defendant agrees to cooperate with the United States by taking whatever steps are necessary to pass clear title to the United States of any forfeitable assets, including but not limited to, surrendering title; completing any documents or legal proceedings required to transfer assets to the United States; and taking necessary steps to ensure that assets subject to forfeiture are not sold, disbursed, expended, destroyed, damaged, hidden or otherwise made unavailable for forfeiture or removed beyond the jurisdiction of the Court.

g. The defendant waives the right to a jury trial on the forfeiture of assets.  The defendant waives all constitutional, legal, and equitable defenses to the forfeiture of assets, as provided by this agreement, in any proceeding, including but not limited to any jeopardy

defense or claim of double jeopardy or any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of an excessive fine.

h.  The defendant acknowledges that the government may institute civil or administrative proceedings against any or all of the defendant's forfeitable assets, including, but not limited to substitute assets and any forfeitable assets not identified by the defendant, and agrees not to contest any such forfeiture proceedings.

i.  The defendant represents and warrants that the defendant has no direct or indirect interest in any property, real or personal, or other asset subject to forfeiture by virtue of this plea agreement, other than those listed above.

j.  In the event the government determines that the defendant has breached any condition of this plea agreement, none of the forfeited property shall be returned to the defendant, nor shall the defendant assert any claim to the forfeited property.  The defendant shall not reacquire any forfeited property, directly or indirectly, through family members, nominees, friends, or associates.

**I.  <u>Determination of Financial Condition and Payment of Interest and Penalties:</u>**

a.  In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees fully to disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party.

b.  The defendant will promptly submit a complete, accurate, and truthful financial statement to the United States Attorney's Office, in a form it provides and as it directs.

c.  The defendant authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

d.  Interest and penalties may accrue, as a matter of law, on any unpaid financial obligation imposed as part of the defendant's sentence, from as early as the date of sentencing.

J. **Remedies for Breach:**

a.  Should the government determine that the defendant, after the date the defendant has signed this plea agreement, (i) has committed any further crime or violated any condition of release or supervision imposed by the Court (whether or not charged); (ii) has given false, incomplete, or misleading testimony or information; or (iii) has moved to withdraw the defendant's guilty plea for reasons other than those described in this agreement or otherwise has breached any term or condition of this plea agreement or supplemental agreements with the government, the government will have the right, in its sole discretion, to void this agreement, in whole or in part.  In the event of such breach, the defendant will remain obligated to plead guilty and otherwise comply with the terms of this agreement and will not be permitted to withdraw the defendant's guilty plea under this agreement. The defendant will be subject to prosecution for any federal criminal violation of which the government has knowledge, including but not limited to charges that this Office has agreed to dismiss or not to prosecute under this agreement.

b.  If the defendant breaches this agreement, the government will have the following remedies, among others, available to it:

i.  To bring prosecution for any federal criminal offenses dismissed or not prosecuted under this agreement.  The defendant waives (gives up) any defense or objection to the

23

commencement of any such prosecution that is not time-barred by the applicable statute of limitations as of the date on which the defendant signed this plea agreement, notwithstanding the expiration of the statute of limitations between the signing of the agreement and the commencement of any such prosecution.

ii. In connection with any such prosecution, any information, statement, and testimony provided by the defendant, and all leads derived therefrom, may be used against the defendant, without limitation and without regard to any rights the defendant may have under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410.

iii. To utilize any information, statement, or testimony provided by the defendant in any proceeding, including at sentencing, notwithstanding U.S.S.G. §1B1.8;

iv. To advocate if, and how, any particular adjustment or specific offense characteristic affects the applicable Sentencing Guidelines range without regard to any contrary stipulations contained in this agreement;

v. To refrain from making any sentencing-related motion favorable to the defendant without regard to any provision in this agreement obligating the government to consider making or make such motion upon fulfillment of certain conditions;

vi. To urge the sentencing Court to take the defendant's breach into account when imposing sentence;

vii. To recommend any sentence the government deems appropriate, even if such recommendation is at odds with any stipulation in this agreement.

K. **Limitations:** This agreement is between the United States Attorney's Office for the Northern District of New York and the defendant.  References to "the government" in this agreement refer only to that Office.  This agreement does not bind any other federal, state, or local

prosecuting authorities.  Furthermore, this agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant, including, but not limited to, proceedings by the Internal Revenue Service relating to potential civil tax liability, proceedings relating to the forfeiture of assets, and proceedings by the Department of Homeland Security, Bureau of Citizenship and Immigration Services relating to the immigration status of the defendant.

L. **Agreement Must be Signed; Modifications Must be Written or on the Record:** This agreement, to become effective, must be signed by all of the parties listed below.  No promises, agreements, terms, or conditions other than those set forth in this plea agreement will be effective unless memorialized in writing and signed by all parties or confirmed on the record before the Court.

M. **Agreement to Plead Guilty Voluntary:** The defendant acknowledges reading each of the provisions of this plea agreement with the assistance of counsel and understands its provisions. The defendant further acknowledges that the defendant's agreement to plead guilty is voluntary

and did not result from any force, threat, or promises (other than the promises in this plea

agreement and any written supplemental agreements or amendments).

CARLA B. FREEDMAN
United States Attorney

_____          May 11, 2022
Steven D. Clymer                            _____
Assistant United States Attorney            Date
Bar Roll No. 509281

_____          _____
Kyle M. Leeper                              Date
Defendant

_____          _____
George Hildebrandt                          Date
Attorney for Defendant
Bar Roll No. 505664

26